UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| RICHARD A. RANDALL, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v.  ) | Case No. 05-2058 |
| ) | |
| JOANNE B. BARNHART, **Commissioner of** ) | |
| **Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**OPINION**

In February 2001, Plaintiff, Richard Randall, applied for disability insurance benefits (hereinafter "DIB") and supplemental security income payments (hereinafter "SSI") under Title II of the Social Security Act (42 U.S.C. §§ 416(I), 423). In March 2003, an Administrative Law Judge (hereinafter "ALJ") denied Plaintiff's application for benefits.

In February 2005, Plaintiff filed a Complaint against the Commissioner of Social Security (#1) and in June 2005, he filed a Motion for Summary Judgment (#9). In September 2005, Defendant filed a Motion for an Order Which Affirms the Secretary's Decision (#13). After reviewing the administrative record and the parties' memoranda, this Court **DENIES** Plaintiff's Motion for Summary Judgment **(#9)** and **GRANTS** Defendant's Motion for an Order Which Affirms the Secretary's Decision **(#13)**.

**I.  Background**

**A.  Procedural Background**

Plaintiff first applied for DIB and SSI in February 2001. (R. 56.) In May 2001, the Social Security Administration (hereinafter "SSA") denied these claims, and Plaintiff submitted a request for reconsideration in June 2001, which was also denied. (R. 30-35.) In September

2001, Plaintiff timely submitted a request for hearing before an ALJ, and in February 2003, ALJ Barbara Welsch held a hearing, at which Plaintiff and a vocational expert testified. (R. 19.) In March 2003, ALJ Welsch found that Plaintiff was not entitled to social security benefits.

In May 2003, Plaintiff filed a Request for Review with the Appeals Council, seeking review of the SSA's final decision. In December 2004, the Appeals Council denied Plaintiff's motion. Plaintiff subsequently filed a complaint in this Court, seeking judicial review of the final administrative decision.

### B. Plaintiff's Background and Medical Record

Plaintiff is forty-seven years old and lives with his wife and son in Danville, Illinois. (R. 206-07.) He has completed three years of college and previously worked as a warehouse manager, construction laborer, and dockworker. (R. 71, 200.) Plaintiff has not worked since March 2000 because of an injury to his back that occurred while he was jackhammering concrete during his employment as a construction laborer. (R. 210.)

Plaintiff has a history of lower back problems, which were exacerbated in March 2000, when he was using a jackhammer at work. (R. 115.) An MRI revealed a diffuse degenerative disk disease, a herniated disc at L4-L5, and several other bulging discs. (R. 115, 129, 134.) After the March 2000 incident, orthopedic surgeon Dr. Bharat Mehta examined Plaintiff on three occasions and noted that Plaintiff's straight leg raising was positive bilaterally at approximately forty-five degrees, tendon reflexes were sluggish but symmetrical, sensation remained intact, and motor power was normal. (R. 115-16.) Dr. Mehta also reported that Plaintiff's lumbar spine range of motion was decreased, but both hips had good range of motion. (R. 115-16.) Dr. Mehta prescribed physical therapy, Vioxx, and Skelaxin, referred Plaintiff for a lumbar epidural steroid, and stated that he was "disabled for work." (R. 115.)

Orthopedic surgeon Dr. Bipin Bavishi examined Plaintiff on three occasions between April 2000 and June 2000. (R. 112-14.) During these examinations, Dr. Bavishi observed that his lumbar range of motion was restricted by about thirty percent in flexion and extension.

2

(R. 112-14.) Plaintiff reported pain when raising his right leg straight at eighty degrees but no significant pain in the right lower extremity. (R. 112-14.) Dr. Bavishi recorded no motor or sensory deficit and normal deep tendon reflexes. (R. 114.) In April 2000, Dr. Bavishi told Plaintiff that he was able to travel for about a week so long as he would rest and do nothing. (R. 113.) Dr. Bavishi recommended surgery, continued physical therapy, and prescription medication, and stated that Plaintiff continued to be disabled. (R. 112).

In June 2000, upon Dr. Bavishi's recommendation, Dr. Peter Hall, a neurosurgeon, examined Plaintiff and subsequently performed a bilateral lumbar diskectomy. (R. 129-32.) After the surgery, in July 2000, Dr. Hall noted that Plaintiff had experienced significant improvement in his sciatica and had some mild residual symptoms. He recommended that Plaintiff refrain from lifting over thirty pounds and avoid repetitive bending and twisting. (R. 128.) In September 2000, Dr. Hall indicated (by checking off a form from the Central Laborers' Pension Fund) that Plaintiff was permanently "unable to engage in . . . employment . . . as a Laborer or other Building Trades Crafts employment in the construction industry," or "unable to engage in further employment . . . of non-Laborer or other non-Building Trades Crafts employment." (R. 125.) In October 2000, in a letter to the Laborers International Union of North America, Dr. Hall reported that Plaintiff's condition had improved but that he still experiences back pain and left leg discomfort and was "totally disabled from all employment requiring lifting greater than thirty pounds or that requires bending or twisting." (R. 124.)

In November 2002, Karen Hill, a physical therapist, and Craig Deverell, an athletic trainer, evaluated Plaintiff's physical residual functional capacity. (R. 176-96.) Plaintiff told Hill that he had not undergone physical therapy or other regular treatment since his surgery, but that he had "just been walking." (R. 178.) He also reported that he had no increase in pain when coughing and sneezing and was independent in daily activities, including climbing the basement stairs every day. (R. 178.) Plaintiff reported that he spent six hours sleeping or lying down, nine hours standing or walking, and nine hours sitting on an average day. (R. 187.) Hill determined that Plaintiff was generally deconditioned with weakness in both lower extremities and that he was functioning at a sedentary functional demand level. (R. 176, 178.) The assessment

3

indicated that Plaintiff could lift ten pounds occasionally, six pounds frequently, and three pounds constantly, and that Plaintiff could sit, stand, walk, reach, climb, and kneel up to one-third of the day. (R. 184.) Based on her examination of Plaintiff, Hill concluded that Plaintiff did not exhibit symptom exaggeration and that he passed all of the validity criteria. (R. 176.)

### C. Testimony at the Hearing

During the administrative hearing in February 2003, Plaintiff testified that he cannot walk for long periods of time and must constantly switch from sitting to standing in order to be comfortable. (R. 212.) Plaintiff takes Ibuprofen for his back pain almost every day and Vioxx "on an as needed basis" (R. 212); he experiences pain in his lower back and upper right leg if he sits, stands, or walks for a long period of time (R. 221-23); and he had experienced back pain after dragging in empty trash containers and after cleaning shelves in his garage for about thirty minutes (R. 224-25).

Regarding his activities, Plaintiff testified that he is independent in his daily activities, including driving, caring for his dogs, making sandwiches, doing laundry, washing dishes, grocery shopping for small items, and using the leaf blower and self-propelled lawnmower. (R. 214-18, 220.) Plaintiff also enjoys recreational activities, such as reading the newspaper, visiting his parents and his adult children, drinking one or two beers at the American Legion once or twice a week, and watching television. (R. 214, 216.) In addition, Plaintiff testified that he has taken short vacations, including a plane trip to Florida in May 2002 and an annual car trip to Terre Haute, Indiana, where he stayed for two days. (R. 219.) Plaintiff also testified that he received a $150,000 workers' compensation settlement in December 2000, and currently receives about $1,500 per month in union disability. (R. 208-09.)

During the hearing, vocational expert (hereinafter "VE") James Lanier considered a hypothetical individual of the same age, education, and work experience as Plaintiff, who possessed a residual functional capacity for light work, limited to jobs that required minimal bending, stooping, and twisting, no climbing, kneeling, crouching, crawling, or prolonged walking, and no work at unprotected heights. (R. 227.) Mr. Lanier testified that these

restrictions would eliminate the individual's ability to work in all of Plaintiff's previous occupations as performed by Plaintiff. (R. 227.) Mr. Lanier told the ALJ that Plaintiff's tasks as a warehouse manager involved more physical strain than the job profile for a warehouse manager in the national economy and that the hypothetical individual would be able to work as a warehouse manager if the position entailed the usual tasks. (R. 227.) Mr. Lanier also determined that such an individual could work as a cashier (sedentary or light), ticket checker (sedentary), sorter (light), and interviewer (sedentary or light). (R. 228.) He noted that the sit/stand option would be available for the sedentary jobs of cashier, ticket checker, and interviewer, and for about half of the light sorter jobs. None of these jobs require prolonged standing. (R. 228.)

### D. The ALJ's Decision

In determining whether a claimant is disabled within the meaning of the Social Security Act, the ALJ must proceed through a five-step analysis. 20 C.F.R. § 416.920(a)-(f). The Secretary must determine in sequence: (1) whether the claimant is currently employed (or was during the relevant period); (2) whether he had a severe impairment; (3) whether the impairment met or equaled one listed by the Secretary; (4) whether the claimant could have performed his past work; and (5) whether the claimant was capable of performing any work in the national economy. *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992). Once the claimant has satisfied the first two steps, he will automatically be found disabled if he suffers from a listed impairment. If the claimant does not have a listed impairment, but cannot perform his past work, the burden shifts to the Secretary to show that the claimant can perform some other job. *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995).

In this case, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 2000, and he had a combination of severe impairments. Thus, Plaintiff satisfied steps one and two of the test. (R. 20-21.) However, Plaintiff failed to satisfy step three of the test because his disability did not meet a listed impairment in Appendix I. (R. 24.) Regarding step four, the ALJ stated in her findings that Plaintiff was not able to perform his past relevant work (although the text of the decision stated that Plaintiff could work as a warehouse

5

manager as that job is usually performed (R. 23)). (R. 25.) Regarding step five, based on the VE's testimony, the ALJ determined that Plaintiff was not disabled because he could perform a variety of other jobs entailing light or sedentary work. (R. 25.) The ALJ made the following specific findings: (1) Plaintiff has a L4-5 disc protrusion and history of microlumbar diskectomy and hypertension, but he does not have an impairment or a combination of impairments that meets or medically equals the impairments listed in 20 C.F.R. § 404, Subpt. P, App. 1, Reg. 4; (2) Plaintiff's alleged degrees of pain and functional limitation were not credible because they were not supported by the medical evidence or relevant credibility factors; (3) Plaintiff has the residual functional capacity (hereinafter "RFC") to perform light work with minimal bending, stooping, and twisting, and no kneeling, crouching, crawling, prolonged walking, climbing, or work at unprotected heights; (4) Plaintiff was not able to perform his past relevant work as warehouse manager as he had performed that job; and (5) Plaintiff cannot perform a full range of light work, but he could perform a significant number of other jobs available in the national economy. (R. 24-25.) As a result, the ALJ concluded that Plaintiff was not disabled for the purposes of the Social Security Act and so was not eligible for DIB or SSI. (R. 25.)

## II. Standard of Review

In reviewing a denial of social security benefits, this Court does not try the case *de novo* or replace the ALJ's finding with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). The findings of the Commissioner of Social Security[1] as to any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). Thus, the question before the Court is not whether Plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's findings. *Diaz*, 55 F.3d at 306. The United States Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

---

[1] Because the Secretary has delegated her authority to make final decisions to the Appeals Council *(see* 20 C.F.R. §§ 404.900, 404.981, 416.1400, 416.1481), we must "review the decision of the Appeals Council rather than the decision of the ALJ." *See Arbogast v. Bowen,* 860 F.2d 1400, 1402 (7th Cir. 1988) (citations omitted). However, because in this case the Appeals Council explicitly adopted the opinion of the ALJ, we must determine whether substantial evidence supports the ALJ's decision. *Id.*

In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether Plaintiff is disabled, the Court must affirm the ALJ's decision denying benefits. *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996).

The Court gives considerable deference to the ALJ's credibility determinations and will not overturn them unless the plaintiff can show that those findings are patently wrong. *Urban v. Sullivan*, 799 F. Supp. 908, 911 (C.D. Ill. 1992) (citing *Kelley v. Sullivan*, 890 F.2d 961, 965 (7th Cir. 1989)). However, when credibility determinations rest on objective factors or fundamental implausibilities rather than subjective considerations, reviewing courts have more freedom to review the ALJ's credibility determinations. *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994).

### III. Analysis

Plaintiff argues that Court should grant summary judgment in his favor for the following reasons: (1) the ALJ erred at Step Four of the evaluation process; (2) the ALJ erred by considering whether Plaintiff was capable of performing any work in the national economy (Step Five) after determining that Plaintiff could perform his past work; (3) the ALJ's Step Five analysis contained several errors, including an improper analysis regarding Plaintiff's lack of transferable skills, failing to perform a function-by-function assessment of Plaintiff's RFC, and failing to give appropriate weight to the November 2002 RFC evaluation; and (4) the ALJ failed to properly assess Plaintiff's credibility. Based on these errors, Plaintiff contends that substantial evidence in the record does not support the ALJ's decision.

### A. The Step Four Analysis

Plaintiff first argues that the ALJ erred at Step Four when she stated in the text of her decision that Plaintiff could "perform his past relevant work as a warehouse manager as it is

generally performed in the national economy."[2] (R. 23.) Plaintiff contends that, based on the Dictionary of Occupational Titles (hereinafter "DOT") definition of a warehouse manager provided by the VE, this conclusion was inconsistent with the ALJ's previous statement that Plaintiff "cannot perform any climbing or work at unprotected heights. His (*sic*) is limited to minimal bending, stooping and twisting. He cannot perform any kneeling, crouching or crawling." (R. 23).

Defendant appears to agree with this reasoning. Nevertheless, Defendant argues that Plaintiff has waived this argument. *See Donahue v. Barnhart*, 279 F.3d 441, 447 (7th Cir. 2002) (stating that raising a discrepancy between a VE's testimony and the DOT "only after the hearing . . . is too late"). In addition, Defendant states that the VE may have been relying on a different DOT warehouse manager position that does not require kneeling, crouching, crawling, or stooping. *See* DOT § 184.167-114. However, the record expressly refers to DOT § 185.167018 (R. 110), and the VE did not clarify his testimony.

According to the DOT definition provided by the VE, a warehouse manager must be able to engage in "extensive reaching, stooping, kneeling, [and] crouching," among other requirements. (R. 110 (citing the requirements for Manager, Distribution Warehouse, DOT § 185.167018).) Based on this definition, the Court agrees that the ALJ's conclusion that Plaintiff could perform the job of warehouse manager as it is usually performed was inconsistent with her RFC finding. Thus, she erred in her Step Four analysis. However, that error is harmless because the ALJ went on to perform a Step Five analysis. *See Keys v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003) (applying harmless error review to ALJ's determination). Therefore, remand for reconsideration of the analysis at Step Four would not affect the outcome of this case. *See id.*

---

[2] The Court notes that, in her findings, the ALJ stated that Plaintiff was unable to perform his past work. (R. 25, ¶ 6.) Therefore, there is arguably no error at Step Four to discuss.

### B. Performing a Step Five Analysis After Determining that the Claimant Could Perform Past Relevant Work

Plaintiff next argues that the ALJ should not have performed a Step Five evaluation because she had already determined that Plaintiff could perform his past relevant work. To support this argument, Plaintiff relies on the Regulations, which state as follows:

> The sequential evaluation process is a series of five "steps" that we follow in a set order. If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step.

20 C.F.R. § 404.1520(a)(4).

As Defendant points out, this language in the Regulations indicates that the ALJ *need* not perform a Step Five analysis once she determines that the claimant is not disabled at Step Four. However, the Regulations do not *prohibit* the ALJ from going on to Step Five. Accordingly, the Court concludes that the ALJ did not err by performing a Step Five analysis, especially in light of her finding (R. 25, ¶ 6) that Plaintiff could not perform his past work.

### C. The ALJ's Credibility Determination

Plaintiff next argues that the ALJ erred when she determined that Plaintiff's complaints lacked credibility because he had received a workers' compensation settlement and also receives union disability payments. Specifically, Plaintiff states that the ALJ's consideration of the money Plaintiff has received in workers' compensation benefits or from disability insurance has no place in the disability evaluation process and was prejudicial to Plaintiff. He cites *Wilder v. Chater*, 64 F. 3d 335, 338 (7th Cir. 1995), in which the Seventh Circuit court stated that a claimant who had won two million dollars was nevertheless "entitled to a decision [regarding eligibility for social security benefits] based on the record rather than on a hunch."

The Court agrees that Plaintiff is entitled to a decision "based on the record." *Id.* Plaintiff has attempted to capitalize on the ALJ's gratuitous remarks noted above. Nevertheless, as Defendant pointed out, the ALJ's credibility assessment was not based on her opinion

regarding Plaintiff's workers' compensation benefits or union disability payment. The ALJ's decision shows that she considered several factors, including the following: (1) Plaintiff had not had any physical therapy or treatment for his back since his surgery in 2000 and he does not wear his brace; (2) Plaintiff has not pursued treatment from a pain clinic; and (3) Plaintiff takes Ibuprofen regularly for pain and Vioxx and Darvocet as needed and the medication helps his symptoms. The ALJ also noted that: (4) Karen Hill, a physical therapist, reported that Plaintiff was generally deconditioned; and (5) Plaintiff's activities of daily living indicate an ability to work (R. 22).

The Court disagrees with some of the ALJ's statements regarding Plaintiff's activities of daily living. For example, his trip to Florida in 2002 and his annual trip to Terre Haute for two days are a type of sporadic and transitory activity that do not show an ability to engage continuously in substantial gainful activity. *See, e.g., Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 119 (3d Cir. 1995); *Nelson v. Bowen,* 882 F.2d 45, 48 (2d Cir. 1989). Nevertheless, the Court gives considerable deference to an ALJ's credibility determinations and will not overturn them unless the plaintiff can show that those findings are patently wrong. *Urban*, 799 F. Supp. at 911. After considering the ALJ's reasoning regarding her credibility determination as a whole, this court cannot conclude that her credibility determination is "patently wrong."

### D. The Step Five Analysis

Plaintiff next argues that the ALJ made several errors at Step Five, including finding Plaintiff disabled even though she concluded that he had no transferable skills, failing to perform a function-by-function assessment of Plaintiff's capacity for light or sedentary work, and failing to give appropriate weight to the November 2002 RFC evaluation.

Plaintiff first argues that the ALJ erred by finding Plaintiff disabled even though she concluded that he had no transferable skills. In support, he relies on the following language in the Regulations:

> At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4)(v).

Plaintiff's argument appears to be based on a misunderstanding of the meaning of "transferable work skills." The Regulations describe transferable work skills as "[s]kills that can be used in other work" and then provide as follows:

> What we mean by transferable skills. We consider you to have skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs.

20 C.F.R. § 404.1568(d)(1). Thus, the lack of transferable skills is not the same as an inability to "adjust to other work." Based on the description of transferable skills in the Regulations, the ALJ's statement that Plaintiff had no transferable work skills is not inconsistent with her subsequent conclusion that he is not disabled, because a person with no transferable work skills may still be able to perform unskilled work. Thus, the ALJ did not err by subsequently finding Plaintiff not disabled even though he did not have any transferable skills.

Plaintiff next argues that the ALJ erred by failing to perform a function-by-function assessment of Plaintiff's capacity for light or sedentary work. This argument appears to be based on the issue of whether Plaintiff has the RFC to perform sedentary work. Specifically, Plaintiff contends that the ALJ failed to consider Plaintiff's inability to sit for at least six hours in an eight-hour work day, as required for sedentary work. Plaintiff also states that when counsel questioned the VE about this issue, the ALJ prevented his inquiry.

The Court has reviewed the hearing testimony regarding the sit/stand option and the VE's testimony about what jobs allow the sit/stand option. (R. 228-231.) It is true that the ALJ

11

intervened when Plaintiff's counsel was questioning the VE about the meaning of a sit/stand option. However, the intervention appeared to be an attempt to clarify the meaning of the sit/stand option and the definition of sedentary work, which were apparently a source of confusion.

Sedentary work is an exertional class of work that a claimant can do if he can (1) sit up for approximately six hours of an eight-hour workday, (2) do occasional lifting of objects up to ten pounds, and (3) occasionally walk or stand for no more than about two hours of an eight-hour workday. *See* 20 C.F.R. § 404.1567(a)[3]; *Diaz*, 55 F.3d at 306; Social Security Ruling 83-10. Light work requires more walking or standing and an ability to lift ten pounds frequently. If someone can do light work, it is assumed that he can also do sedentary work, unless there are additional limiting factors such as inability to sit for long periods of time. 20 C.F.R. § 404.1567(a). "Occasional" means occurring from very little up to one-third of the time; "frequent" means occurring from one-third to two-thirds of the time. SSR 83-10, 1983 WL 31251, *5-6.

---

[3]The Regulations define the exertional classes of sedentary and light work as follows:
(a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
20 C.F.R. § 404.1567(a-c).

12

The sit/stand option is the option to change positions at will. Thus, it describes a modification to the exertional category. The need for a sit/stand option takes the case out of the grid and requires the input of a VE. SSR 96-9p; *see* SSR 83-12; *Peterson v. Chater,* 96 F.3d 1015, 1016 (7th Cir. 1996).

Here, the ALJ determined that Plaintiff had the ability to perform light work except that he is limited to minimal bending, stooping, and twisting, and no climbing, work at unprotected heights, kneeling, crouching, or crawling. (R.24.) The ALJ also stated that Plaintiff could not perform prolonged walking. The VE testified that a number of light and sedentary jobs existed in the national economy that an individual with the above characteristics could perform.

The ALJ's decision did not state that Plaintiff required the sit/stand option. Nevertheless, she asked the VE whether any of the jobs he had described allowed a sit/stand option. The VE testified that the sedentary jobs that he had mentioned and about half of the light sorter jobs would allow for the sit/stand option. Thus, although the ALJ did not expressly find that Plaintiff required the sit/stand option, she questioned the VE regarding the availability of jobs that included that option. As a result, the Court concludes that the ALJ did not fail to consider Plaintiff's inability to sit for six hours in an eight-hour work day.

Plaintiff next argues that the ALJ erred by failing to give appropriate weight to the November 2002 physical RFC evaluation performed by Karen Hill, a physical therapist, and Craig Deverell, an athletic trainer. With regard to this evaluation, the ALJ stated as follows:

> The undersigned does not assign controlling weight to the limitations set forth in the functional capacity evaluation as they were determined by a physical therapist who saw the claimant on only one occasion. She even noted that the claimant was deconditioned. Thus, the claimant's functional limitations may have been more likely a result of his lack of conditioning than of his back impairment. Furthermore, the limitations are inconsistent with the restrictions set forth by the claimant's treating neurosurgeon. The listing requirements of the specialist doctor are more reliable than a physical therapist.

R. 22.

13

Under the Regulations, physical therapists are not "acceptable medical sources" who can provide evidence to establish an impairment. 20 C.F.R. § 404.1513(a). Instead, they are "other sources" who may provide evidence of the severity of impairment and how it affects the claimant's ability to work. 20 C.F.R. § 404.1513(d). As an "other source," a physical therapist's opinion is entitled to less weight than the opinion of an acceptable medical source. *Seilheimer v. Massanari*, 2001 WL 664456, *7-8 (N.D. Ill. 2001). Thus, the ALJ did not err by failing to assign controlling weight to Hill's evaluation. In addition, the fact that the ALJ did not assign controlling weight to Hill's evaluation does not mean that she disregarded it altogether. Instead, she considered that opinion in conjunction with the opinions of acceptable medical sources.

To determine RFC, the ALJ considers all the relevant evidence in the record. 20 C.F.R. § 404.1545(a). In assessing conflicting medical opinion evidence, an ALJ must consider a variety of factors, including whether a physician is a treating or examining physician; the length, nature, and extent of the treatment relationship; the physician's specialty; and the consistency and basis of the physician's opinions. 20 C.F.R. §§ 404.1527(a)-(d), 416.927(a)-(d). The determination of whether a claimant is "disabled" from all substantial gainful activity is reserved to the ALJ. 20 C.F.R. § 404.1527(e)(1).

The record contains the following evidence from Dr. Hall and Ms. Hill: Dr. Hall performed a microlumbar diskectomy in June 2000. In July 2000, he opined that Plaintiff could not return to his current job in heavy labor, and he stated that Plaintiff was permanently restricted from lifting greater than thirty pounds and from any repetitive bending or twisting. (R. 128.) In September 2000, Dr. Hall completed a form for the Central Laborers' Pension Fund in which he checked a box indicating that Plaintiff was totally and permanently disabled. (R. 125.) In October 2000, Dr. Hall opined that Plaintiff would be "totally disabled from any employment requiring lifting greater than thirty pounds or that requires bending and twisting." (R. 124.)

In their November 2002 RFC evaluation, Hill and Deverell opined that Plaintiff could frequently lift six pounds, occasionally lift ten pounds, and occasionally sit, stand, walk, climb, reach, and kneel, but he could never bend, squat, crawl, or use foot controls. They ultimately concluded that Plaintiff "cannot work." (R. 184.)

To the extent that Dr. Hall opined Plaintiff was "disabled" from all substantial gainful activity, and that Hill opined that Plaintiff "cannot work," these conclusions are reserved to the ALJ. 20 C.F.R. § 404.1527(e)(1). A claimant is not entitled to disability benefits simply because his physician states that he is "disabled" or unable to work. *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). Furthermore, the Court agrees with Defendant that Dr. Hall's report did not state that Plaintiff could do no work whatsoever. Instead, looking at Dr. Hall's reports as a whole, the Court concludes that he believed that Plaintiff should be restricted from returning to his previous work in construction and from performing any work that involves heavy lifting or bending and twisting.

The record shows that the ALJ considered the opinions of both Dr. Hall and Ms. Hill in determining Plaintiff's level of disability and ability to work. She based her decision on the evidence and articulated the reasons she did not give controlling weight to the November 2002 evaluation and how she arrived at the RFC. This Court cannot replace the ALJ's findings with its own assessment of the evidence. *Pugh*, 870 F.2d at 1274. As long as reasonable minds could differ concerning whether the claimant is disabled, the Court must affirm the ALJ's decision denying benefits. *Books*, 91 F.3d at 977-78. In this case, substantial evidence supports the ALJ's decision. Accordingly, the Court denies Plaintiff's motion for summary judgment and grants Defendant's motion for an order which affirms the Commissioner's decision.

IT IS THEREFORE ORDERED:

    (1) Plaintiff's Motion for Summary Judgment (#9) is DENIED.

    (2) Defendant's Motion for an Order Which Affirms the Commissioner's Decision (#13) is GRANTED.

    (3) This case is terminated.

ENTERED this 10th day of March, 2006

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE